SMITH, Superintendent of Banks, Appellant, v. PHILLIPS, et al, Respondents.

(235 N. W. 102.)

(File No. 6972. Opinion filed February 19, 1931.)

*Perry F. Loucks* and *Hasche & Foley,* all of Watertown, and *T. B. Thorson,* of Pierre, for Appellant.

*William Issenhuth,* of Huron, for Respondent Mariah A. Phillips.

MISER, C. From 1908 until his death in 1929, Eugene Phillips was the record owner of a tract of land of which the quarter section in controversy was a part. From 1914 until 1925, Edwin Phillips, the son of Eugene, lived upon and farmed this tract, the buildings being upon the quarter section in controversy. In July, 1919, Edwin borrowed $4,000 from the State Bank of Melham to buy a tractor, giving a chattel mortgage as security. Later in the same summer, he borrowed another $1,400 from the Melham bank to buy a new separator. Later in 1919 the notes representing this $5,400 indebtedness were renewed. On December 10, 1920, Edwin again renewed them by signing notes for $7,510. On September 25, 1923, the Melham bank took judgment for $6,674.17 against Edwin on those notes. None of these notes were secured by a real estate mortgage, nor were they signed by Eugene Phillips, the

father. After taking judgment against Edwin, the bank brought suit against Edwin and Eugene to have Edwin decreed to be the owner of the quarter section and the judgment of the bank to be a lien thereon. The bank claimed that, prior to its loan to Edwin, Eugene had deeded the land to Edwin, but that Edwin, for the purpose of defrauding his creditors, had withheld the deed from record.

The trial court found that on September 10, 1920, Eugene did execute a deed to the land, naming Edwin as grantee. On the same date Eugene made a will reciting that he had theretofore conveyed to each of his sons a quarter section of land. He named therein Edwin as one of such sons and described the quarter section in controversy as having been conveyed to him. Eugene had theretofore conveyed a quarter section to each of three sons, but each had paid him something therefor, one son paying him $5,040. However, both Eugene and his wife denied that this deed was ever handed to Edwin, and he denied ever having received it. The evidence discloses that, when Eugene brought home the deed and the will from the attorney's office where they were drafted, he put them in the bookcase, or handed them to his wife to do so, and that they were kept in his own house until he destroyed them. On December 29, 1920, nineteen days after the execution of the will and the deed, Eugene had to pay a note for $2,570 which he had signed for Edwin at another bank. Edwin was at that time so financially involved that a few months later, on his voluntary petition, he was adjudicated a bankrupt. When Edwin did not pay them the $4,000 which he owed them, of which the note for $2,570 was a part, they (Eugene and his wife) changed their minds about giving the land to Edwin.

There is ample evidence to support the trial court's finding that Edwin did expect his father at some future date after he (Edwin) was free from debt, either by deed or will to convey or bequeath the land to him, and that Eugene did, on September 10, 1920, intend to so convey or bequeath the land to Edwin upon conditions which did not come to pass, and that he then knew that Edwin was heavily involved financially, and "that fact constituted one of the reasons why Eugene Phillips retained absolute and complete possession and control of said deed of conveyance and never delivered or intended to deliver the same to the said Edwin T.

Phillips," but that the deed and the will were thereafter destroyed by Eugene without the deed ever having come into the possession or control of Edwin.

Burleson, who was cashier of the bank for 15 months, during which time the original loans were made and once renewed, testified that, prior to making the loans, Edwin told him that he owned the land, and that he (Burleson) then drove to Eugene's home and Eugene confirmed Edwin's statement. He is the only witness who testified that Edwin and Eugene told him before the loan was made that Edwin owned the land. But he took no property statement nor any mortgage on the land. Edwin and Eugene both positively deny having stated that Edwin owned the land or had received a deed to it. The deed of September 10, 1920, was executed at least fourteen months after the loan was made.

Appellant contends that, even though there was no actual manual delivery of the deed, there was a symbolic delivery thereof; citing inter alia, O'Connor v. McCabe, 46 S. D. 269, 192 N. W. 370; Lower v. Lower, 47 S. D. 458, 199 N. W. 199. The facts of those two cases are very different from the facts in the case at bar. Under the facts found herein—and they are amply supported by the evidence, with no clear preponderance against them—there was no delivery of the deed under the rule of the cases cited.

The judgment must be, and is, affirmed.

POLLEY, P. J., and CAMPBELL, BURCH, ROBERTS, and WARREN, JJ., concur.