STATE v. MINNESOTA FEDERAL SAVINGS & LOAN ASSOCIATION.[1]

August 4, 1944.

No. 33,663.

[1]Reported in 15 N. W. (2d) 568.

*G. A. Youngquist, Fowler, Youngquist, Furber, Taney & Johnson,* and *Frederick W. Thomas,* for appellant.

*J. A. A. Burnquist,* Attorney General, *P. F. Sherman,* Assistant Attorney General, and *David W. Lewis,* Special Assistant Attorney General, for the State.

MAGNEY, JUSTICE.

This appeal by defendant arises out of proceedings brought by the state under § 45 of the Minnesota income tax act (L. 1933, c. 405, as amended) for collection of income tax claimed to be owing by defendant for the year 1937 in the sum of $3,465.86. Defendant claims that the provision of the act under which the tax is sought to be collected is invalid. The court ordered judgment for the state. The appeal is from the order denying defendant's motion for a new trial.

The Minnesota income tax act as first enacted exempted from its provisions state and federal savings and loan associations, credit

unions, and various mutual and coöperative organizations. By Ex. Sess. L. 1937, c. 49, § 5, the exemption of savings and loan associations was withdrawn. By § 18 of the 1937 act, the 1933 act was amended so as to allow against the taxable net income of state associations a credit equal to the dividends paid during the taxable year to the members of such associations, but no like credit was allowed against the taxable net income of federal associations—a clear discrimination against the latter. By L. 1939, c. 446, complete exemption was restored to both federal and state associations, and by L. 1941, c. 550, the exemption was again withdrawn as to federal and state associations, but an allowance of credit equal to the dividends paid was given to both.

The taxable income involved in these proceedings is for the year 1937.

Prior to 1935, defendant was a building and loan association organized and operating under the laws of Minnesota. In that year, by the home owners loan act of 1933, it was converted into a federal savings and loan association. 48 Stat. 128, c. 64, § 5, 12 USCA, § 1464. Subd. (a) thereof provided for the organization of savings and loan associations "In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes." Defendant is a member of the Federal Home Loan Bank of Des Moines. Its main office is in St. Paul, Minnesota, and it carries on its activities principally in St. Paul and Minneapolis. Its business consists of issuing shares and receiving payments thereon, usually in small amounts and from small investors, paying dividends thereon, lending its assets to members principally on the security of liens on small homes, repayable in monthly installments over a period of years, and in making other loans to its members. Each share owner and each borrower is a member of the association and entitled to vote at its meetings. As of 1937, it had 5,400 members, who had paid in more than $7,000,000 on account of shares and had outstanding mortgage loans and contracts aggregating more than $10,000,000. It is a mutual and coöperative thrift and home financing institu-

tion. In Minnesota there are 31 federal associations. They have upwards of 28,000 members, who have paid in about $20,000,000 on shares and have outstanding loans and contracts secured by liens on real estate aggregating approximately $26,000,000.

In 1937, there were 255 credit unions in Minnesota organized under L. 1925, c. 206, Minn. St. 1941, §§ 52.01 to 52.23 (Mason St. 1927, §§ 7774-1 to 7774-24), having 49,000 members and assets of more than $4,500,000. By § 52.01 (§ 7774-1), each credit union, as described by the statute, is "a coöperative society, incorporated for the two-fold purpose of promoting thrift among its members and creating a source of credit for them at legitimate rates of interest for provident purposes." They receive savings of members in payment of shares or as deposits, usually in small amounts from small investors, paying dividends thereon, and making loans to members, repayable in monthly installments over a period of years. Each person owning a share in, and each person borrowing money from, a credit union is a member of the union and is entitled to vote at its meetings. Twenty-three of these credit unions make mortgage loans to members and in 1937 had outstanding such loans aggregating more than $750,000, secured by liens on real estate, for the most part on small homes, repayable in monthly installments over a period of years. In 1939, credit unions had increased to 62,480 members and more than $1,350,000 in real estate mortgage loans. In 1941, there were 374 credit unions, having 75,297 members and $2,172,000 in real estate mortgage loans. Credit unions are wholly exempted from the Minnesota income or franchise tax. There are operating in Minnesota large numbers of farmers, fruit growers, and other like associations, farmers mutual insurance companies, and coöperative and mutual rural telephone associations organized and operated on a coöperative basis and paying dividends on shares. These associations are exempted from the Minnesota income or franchise tax.

It is contended by defendant that the statute involved violates the uniformity clause of the state constitution and the equal protection clause of the Fourteenth Amendment to the federal constitution.

The uniformity clause of the Minnesota constitution is not more restrictive than the equal protection clause of the Fourteenth Amendment. Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102; C. Thomas Stores Sales System, Inc. v. Spaeth, 209 Minn. 504, 297 N. W. 9.

As stated, credit unions are specifically exempted from the income and franchise tax. They are taxed in the same manner as savings banks, under the provisions of Minn. St. 1941, § 273.52 (Mason St. 1927, § 2022). This section provides that from the aggregate of the value of all property owned by the bank (other than real estate, which is assessed and taxed as such, and other than tax-exempt securities, which are not taxed at all) there shall be deducted the total amount of its deposits and accounts payable, and the remainder, if any, shall be listed as credit. Under that section, a credit tax is imposed on the bank's surplus after deducting real estate and tax-exempt securities. They pay no tax on tangible personal property. They pay no moneys and credits tax, and they pay only a credits tax at a rate of 30 cents per $100 on whatever surplus may remain. The result is that they escape practically all taxes. All of the 89 associations in Minneapolis paid a total of less than $200. State and federal savings and loan associations, as well as credit unions, pay ad valorem taxes on real estate. The associations pay ad valorem taxes on furniture and fixtures and moneys and credits taxes on receivables and cash in banks and on hand.

The association contends that credit unions are in every substantial respect like federal savings and loan associations—in purpose, organization, and method of doing business, and there are no substantial differences between them. The state, on the other hand, insists that the differences are so substantial as to warrant discrimination between them for taxation purposes. The latest expression of this court on this question is found in Montgomery Ward & Co. Inc. v. Commr. of Taxation, 216 Minn. 307, 309, 12 N. W. (2d) 625, 627, where the rule was again stated by this court as follows:

"We have held that the legislature 'has a wide discretion in classifying property for the purposes of taxation, but the classification must be based on differences which furnish a reasonable ground for making a distinction between the several classes. The differences must not be so wanting in substance that the classification results in permitting one to escape a burden imposed on another under substantially similar circumstances and conditions.' State v. Minnesota Farmers Mut. Ins. Co. 145 Minn. 231, 234, 176 N. W. 756, 757; Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102; National Tea Co. v. State, 205 Minn. 443, 286 N. W. 360; State ex rel. Mudeking v. Parr, 109 Minn. 147, 152, 123 N. W. 408, 134 A. S. R. 759; In re Improvement of Third Street, 185 Minn. 170, 240 N. W. 355. The United States Supreme Court has followed substantially the same rule. Louisville G. & E. Co. v. Coleman, 277 U. S. 32, 37, 48 S. Ct. 423, 425, 72 L. ed. 770, 774. In that case the court said:

" '* * * In the first place, it may be said generally that the equal protection clause means that the rights of all persons must rest upon the same rule under similar circumstances, * * *. It does not, however, forbid classification; and the power of the state to classify for purposes of taxation is of wide range and flexibility, provided always, that the classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." ' "

This court further stated (216 Minn. 311, 12 N. W. [2d] 627):

"* * * The difference between the subjects taxed need not be great, and if any reasonable distinction can be found the court should sustain the classification embodied in the law. Louis K. Liggett Co. v. Lee, 288 U. S. 517, 533, 53 S. Ct. 481, 484, 77 L. ed. 929, 936, 85 A. L. R. 699. The legislature has a broad discretion in determining that classification has a reasonable relation to a governmental purpose, and the courts should not interfere unless there is palpable error. Reed v. Bjornson, 191 Minn. 254, 253

N. W. 102, and State ex rel. Foot v. Bazille, 97 Minn. 11, 106 N. W. 93, 6 L. R. A. (N. S.) 732, 7 Ann. Cas. 1056."

In the Montgomery Ward case the court reviews the earlier Minnesota cases where this court, on the facts of each particular case, determined whether or not the statutes involved violated the constitutional provisions. It is unnecessary again to review them.

The situation presented in each case determines whether or not a particular classification violates the constitutional provisions. It becomes necessary, therefore, in this case to detail the main facts showing in what respects the defendant and credit unions are similar and in what respects they differ. In the first place, both are local mutual thrift associations. Both receive savings as payments on shares in no set amounts. Both lend money to members on security of liens on homes. In both, persons owning shares in, or borrowing from, the association are entitled to vote. Both may borrow up to 50 percent of assets. Both may lend on security of members' shares. Both are required to set aside substantial reserves.

In 1937, as has been stated, the 31 federal associations alone had outstanding loans and contracts secured by liens on real estate aggregating $26,000,000. They are fast-growing institutions. In 1937, the 47 state associations had outstanding loans and contracts secured by liens on real estate aggregating $18,000,000. In 1937, the 255 credit unions had assets of more than $4,500,000. In that year they had outstanding mortgage loans aggregating more than $750,000. In 1941, they had $2,172,000 in real estate loans. Only 23 of the credit unions make mortgage loans to their members.

They differ in the following respects: The association makes its loans principally on security of homes or combinations of homes and business property. It also makes loans on the security of its shares. It may, under certain conditions hereinafter referred to, make loans on other improved real estate. The credit unions make chiefly personal loans. The association deals with members living within 50 miles from the main office in St. Paul, except in certain situations which will be referred to later. The credit unions deal

with members united by a common bond of occupation or association, or a group within a well-defined rural district. The average loan made by the association is larger than that made by the credit union. Members of the association are entitled to as many votes as they have shares, up to 50, and may vote by proxy. Each member of the credit union has but one vote and must vote in person.

The home owners loan act prohibits federal associations from accepting deposits, while credit unions are authorized to and do accept deposits. Credit unions own no real estate, except as it may be acquired by foreclosure. The credit unions are created especially for the purpose of providing people of moderate means, salaried employes, and wage earners with an institution where they may borrow money for personal needs, such as medical bills, and to meet temporary emergencies. Credit unions are under the supervision of the state commissioner of banks. Defendant is under the supervision of the Federal Home Loan Bank Board.

The only question here is whether there is any evidence supporting the finding that there are "substantial differences" between them. If there is any evidence in this record supporting that finding, the decision below, on the point now under consideration, must be affirmed. The trial court held that the differences between the defendant and the credit unions constituted a sufficient basis for separate classification for the purpose of taxation. In this we agree. Although many of the credit unions do make loans on the security of homes, their primary purpose is to make personal loans to members. Most of them now make only personal loans, but it is fair to assume that most of them, if not all, will eventually make loans on the security of homes. They have the authority to do so. However, their original purpose and function is to make personal loans in small amounts, payable in installments. The association's principal purpose and function is to make loans upon homes or combinations of homes and business property. There is a general limitation of $20,000 in amount. However, federal associations may loan not to exceed 15 percent of their assets on other improved

real estate without regard to the $20,000 limitation or without regard to the 50-mile limit, but secured by first lien thereon. It does not engage in the business of making personal loans, except on the shares as security. Such loans are but a small part of its business. The credit unions are authorized to serve only those united by a common bond of occupation or association or by residence within a well-defined rural area. Thus, a credit union organized by public employes serves only public employes. One organized by postal employes serves only postal employes. There is a close, personal touch between the credit union officials and the members. The latter are all in about the same financial situation, at least as to income. Each member knows quite well the problems of the other members. There is a community of interest. There is nothing impersonal in the dealings between the credit union and its members. A credit union in a rural community can serve only those who have their residence within a well-defined area. There, each member has a fair knowledge of the other members as individuals and also their financial situations. Defendant, on the other hand, is authorized to serve all persons within 50 miles of its home office in St. Paul and in some circumstances a larger area; that is, it is authorized to serve at least one-third of the population of the state. Within that area its authority is unlimited. The services of the association are available to everyone. The ability and willingness of the savings and loan associations to serve every homeowner and every investor are evidenced by the numerous advertisements in the newspapers and over the radio. It is purely a business proposition. The personal touch is absent. The average investment of the members of the defendant is approximately $1,300. The average deposit in credit unions is approximately $141. The average shareholding per member of credit unions is approximately $60. Credit unions are allowed to and do accept deposits and at the end of 1937 had on hand nearly $880,000 in deposits. The defendant is not authorized to and does not accept deposits. The average loan made by a credit union in 1937, including those made on real estate, was slightly in excess

of $100. In credit unions, voting by proxy is not allowed. Each member is entitled to one vote. In the defendant association, members are limited to 50 votes and are permitted to vote by proxy. In view of the differences between them, the classification made by the legislature with reference to the taxing of building and loan associations and credit unions is based on a reasonable ground for making a distinction, and the legislation in that respect is valid.

The home owners loan act of 1933 (12 USCA, § 1464[h]), prohibits the state and every other taxing body from imposing any tax on federal savings and loan associations greater than that imposed by the state on other similar local mutual or coöperative thrift and home financing institutions. The language of the act is as follows:

"* * * and no State, Territorial, county, municipal, or local taxing authority shall impose any tax on such associations or their franchise, capital, reserves, surplus, loans, or income greater than that imposed by such authority on *other similar local mutual or coöperative thrift and home financing institutions.*" (Italics supplied.)

Defendant contends that the exemption of credit unions from income tax invalidates such tax as to federal savings and loan associations because it transcends the limitation placed by congress on the right of the state to tax. This presents a difficult problem. A savings and loan association incorporated under federal law is an instrumentality of the United States and free from taxation by states except to the extent that congress may permit it. Commr. of Corporations and Taxation v. Flaherty, 306 Mass. 461, 28 N. E. (2d) 433; Waterbury Savings Bank v. Danaher, 128 Conn. 78, 20 A. (2d) 455; Minnesota v. First Nat. Bank, 273 U. S. 561, 47 S. Ct. 468, 71 L. ed. 774 (national bank shares); Smith v. Kansas City T. & T. Co. 255 U. S. 180, 41 S. Ct. 243, 65 L. ed. 577 (joint stock land bank); Pittman v. Home Owners' Loan Corp. 308 U. S. 21, 60 S. Ct. 15, 84 L. ed. 11, 124 A. L. R. 1263 (home owners loan corporation); Knox National Farm Loan Assn. v. Phillips, 300 U. S.

194, 57 S. Ct. 418, 81 L. ed. 599, 108 A. L. R. 738 (national farm loan association); Federal Land Bank v. Bismarck Lbr. Co. 314 U. S. 95, 62 S. Ct. 1, 86 L. ed. 65 (federal land bank). In Geery v. Minnesota Tax Comm. 202 Minn. 366, 369, 278 N. W. 594, 595, this court said:

"The rule is well settled that the government may employ a corporation as its agency or instrumentality for the execution of its powers, and a state is without authority to tax the instruments, or compensation of persons, which the United States may use and employ as necessary and proper means to execute its sovereign power. * * * The immunity from state taxation upon the means, the operations, and the instruments of the federal government is just as firmly established as is the immunity of the government's property itself."

In view of the differences between federal savings and loan associations and credit unions, we hold that the classification made by the legislature with reference to them is based on a reasonable ground for making a distinction for purposes of taxation and that therefore the legislation in that respect is valid. There are differences, as we have pointed out, but are federal savings and loan associations so *similar* to credit unions that the exemption of credit unions from income tax transcends the limitation placed by congress on the right of the state to tax federal associations such as defendant? The act of congress uses these words (12 USCA, § 1464[h]): "other similar local mutual or coöperative thrift and home financing institutions." The purpose was to protect federal associations from discriminatory taxation which would put them on any less favorable basis than state building and loan associations. Credit unions are "local mutual or coöperative thrift * * * institutions." They are not primarily "home financing institutions." Originally they were not "local mutual or coöperative * * * home financing institutions." In later years, some of the credit unions became "home financing institutions," under the interpretation of the act creating them, wherein it is provided that one of

the purposes of such an institution is (§ 52.01 [§ 7774-1]) "creating a source of credit * * * at legitimate rates of interest for provident purposes." Loaning money for financing a home is properly considered a "provident purpose." "Savings, building and loan associations" are defined in the Minnesota act, Minn. St. 1941, § 51.01, subd. 2 (Mason St. 1940 Supp. § 7770-11[a]), as follows:

" 'Savings, building and loan associations' are financial corporations under public control, authorized solely to accumulate funds to be loaned to their members upon their homes or upon other improved real estate, and to otherwise carry on, in accordance with law, the business of savings, building and loan associations."

The home owners loan act sets out the purpose of federal savings and loan associations as follows:

"In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes, * * *." 48 Stat. 132, c. 64, § 5(a), 12 USCA, § 1464(a).

The main purpose, therefore, of savings and loan associations is the financing of homes. The federal act, under which the defendant is organized and under which it acts, has a loan limitation of $20,000 on the security of first liens upon homes or combinations of homes and business property. It has an exception, as follows (§ 5[c], 12 USCA, § 1464[c]):

"* * * not exceeding 15 per centum of the assets of such association may be loaned on other improved real estate without regard to said $20,000 limitation, and without regard to said fifty-mile limit, but secured by first lien thereon: * * *."

They are thus unlimited as to area of operation, as to amount not in excess of 15 percent of their assets, and as to the character of the improvements. In view of all the facts, we are of the opinion that credit unions are not "other similar local mutual or coöperative thrift and home financing institutions," whose exemption from

income tax transcends the limitation placed by congress on the right of the state to tax.

In Commr. of Corporations and Taxation v. Flaherty, 306 Mass. 461, 28 N. E. (2d) 433, relied on by defendant, the court held that the income tax imposed by G. L. (Ter. ed.) c. 62, § 1, upon dividends received by inhabitants of the commonwealth from share accounts in federal savings and loan associations chartered under the home owners loan act of 1933, was discriminatory and invalid, since similar income received from state chartered coöperative banks was not taxed. The basis for the court's conclusion is set out in these words (306 Mass. 461, 28 N. E. [2d] 433) :

"* * * The business of the association is substantially similar to that conducted by our State chartered coöperative banks. Both appeal to the same type of investor and to the same class of borrowers. Their investments and loans are practically identical in character."

It is apparent, therefore, that the facts in the Massachusetts case are quite different from those here presented.

By Ex. Sess. L. 1937, c. 49, § 5, state and federal savings and loan associations were subject to income tax by repeal of the exemption provision in § 5 of L. 1933, c. 405. Section 18 of the 1937 act amended § 27, subd. (d), of the 1933 act to allow as a credit against net income:

"To each building and loan association organized and existing as such under the laws of this state, an amount equal to the interest and dividends paid during the taxable year to its members as members."

This constituted a discrimination against federal building and loan associations, and the statute is clearly void. It violates the constitutional provision that taxes shall be uniform upon the same class of subjects. It also violates the provision of the home owners loan act which places a limitation on the permission granted to the state to tax federal associations. The Minnesota tax commis-

sion realized the situation and, in January 1939, adopted a regulation to cure the invalidity, which reads as follows:

"**Article 27-4.  Building and Loan Association Credits.**  Since the Federal Law under which building and loan associations may be organized provides that a state shall impose no greater tax burden upon organizations having a Federal charter than the state laws impose upon local organizations without a Federal charter, a recognition of this partial immunity is accomplished by allowing to Federal building and loan associations the credits against taxable net income *which are allowable to building and loan associations organized under the laws of this State in Section 27(d)."*  (Italics supplied.)

The tax commission claims it had authority to adopt the regulation on the strength of L. 1933, c. 405, § 50, which reads:

"* * * It may, from time to time, make and publish such rules and regulations, not inconsistent with this Act, as it may deem necessary *to assist in enforcing its provisions."*  (Italics supplied.)

The tax commission fixed the amount of the tax to be paid by defendant, giving it the same credits for dividends paid that were given the state associations under the statute.  Defendant contends that the tax commission was in fact attempting to amend a statute, which it had no authority to do, and that the regulation adopted did not "assist in enforcing" the provisions of the statute.

The state allowed the credit.  The tax assessed against the association was computed only after allowing the same dividend credit extended to state associations.  As a matter of fact, in the amount of tax assessed it has not been discriminated against.  The state contends that one who is not injured by a tax statute cannot complain of discrimination, and cites C. Thomas Stores Sales System, Inc. v. Spaeth, 209 Minn. 504, 519, 297 N. W. 9, 18, in support of its contention.  However, there is also another rule to be followed in determining the constitutionality of a law, namely, that constitutionality is to be tested not by what has been done under a law but by what may be done under it.  This rule was stated and

applied in State ex rel. Common School Dist. v. Sageng, 182 Minn. 565, 570, 235 N. W. 380, 383, where the court said:

"Neither the unobjectionable character of what has been done pursuant to a statute nor the possibility that future action thereunder may not transgress constitutional limitations will save the act if it clearly authorizes a violation of fundamental written law."

It must be kept in mind that statutes are to be construed, if possible, in such a way as to uphold their constitutionality and to carry out the legislative intent. In State v. D. M. & N. Ry. Co. 207 Minn. 618, 292 N. W. 401, there was involved a statute containing an unconstitutional provision. This court cut it off and applied the act as it remained. In the instant case, the legislature could and did properly provide a credit for state associations. The unconstitutional feature consists in its failure to provide a like credit for federal associations. The commission, in effect, eliminated from Ex. Sess. L. 1937, c. 49, § 18, these words in paragraph (d): "organized and existing as such under the laws of this state."

In Schuylkill Trust Co. v. Pennsylvania, 296 U. S. 113, 56 S. Ct. 31, 80 L. ed. 91, the court held invalid a statute imposing a tax upon the trust company measured by the value of its assets (1) to the extent that the assets included shares of national bank stock (not material here); and (2) to the extent that the statute excluded from the assets the value of tax-exempt shares of Pennsylvania corporations and, at the same time, included the value of federal securities. The Pennsylvania court, after the case had been remanded to it, held that the amendment, which discriminated against United States securities, should be construed as if it were limited in its application, by implying a legislative intent to exclude such securities. This decision was affirmed in Schuylkill Trust Co. v. Pennsylvania, 302 U. S. 506, 58 S. Ct. 295, 82 L. ed. 392.

In People ex rel. Alpha Portland Cement Co. v. Knapp, 230 N. Y. 48, 129 N. E. 202, the court construed an unambiguous statute in order to make it valid. It implied an exclusion.

In Bowman v. Continental Oil Co. 256 U. S. 642, 41 S. Ct. 606, 65 L. ed. 1139, a statute of New Mexico, applicable to distributors of gasoline, imposed an excise of two cents for each gallon sold or used and an annual license tax of $50, payable in advance, for each distributing station, place of business, or agency. It was held that the excise provision, assuming it intended to include both interstate and domestic transactions, was not therefore void *in toto* in its application to a distributor engaged in both, since, the subject matter being separable, full protection could be afforded by enjoining enforcement as to the interstate business. The court also held that the license tax, falling with its prohibition upon the business as a whole, could not constitutionally be applied where interstate and intrastate business necessarily were conducted indiscriminately at the same stations and by the same agencies. The court said (256 U. S. 646, 41 S. Ct. 607, 65 L. ed. 1139):

"* * * the divisible nature of the subject renders it feasible to control the operation and effect of the tax so as to prevent it from being imposed upon sales in interstate commerce, while allowing the State to enforce it with respect to domestic transactions; * * *."

In Ratterman v. Western Union Tel. Co. 127 U. S. 411, 8 S. Ct. 1127, 32 L. ed. 229, it was held that a single tax, assessed under the laws of a state upon receipts of a telegraph company, which were partly derived from interstate commerce and partly from commerce within the state, and which were capable of separation, but which were returned in gross and without separation or apportionment, was invalid in proportion to the extent that such receipts were derived from interstate commerce, but was otherwise valid. In that case it was held that a tax imposed on gross receipts of a telegraph company derived partly from interstate and partly from local commerce should be construed to apply only to the latter.

Our duty to construe a statute so as to render it constitutional, if possible, may not be limited to construction, but extends also to elimination of part of a statute. Cases cited support that position. By eliminating the provision of the statute which limited

certain deductions to state associations only, discrimination can be avoided and the statute upheld. The same credit would thus be extended to defendant and to state associations. It accomplishes equality and eliminates the discrimination now complained of. Whether a credit was given originally by an administration officer or by the judicial branch of the government is immaterial.

L. 1933, c. 405, § 58, provides that each and every part of the act shall be severable. Minn. St. 1941, § 645.20 (Mason St. 1941 Supp. § 10933-21), states:

"Unless there is a provision in the law that the provisions shall not be severable, the provisions of all laws shall be severable. If any provision of a law is found to be unconstitutional and void, the remaining provisions of the law shall remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature would have enacted the remaining valid provisions without the void one; * * *."

It seems clear that the legislative intent would be to sustain the statute in a limited application rather than to eliminate entirely a tax otherwise valid. The legislative purpose was to impose an income tax on both federal and state associations. Equality may be allowed and discrimination eliminated by far less drastic action than wiping out the entire tax imposed upon federal associations. The regulation of the tax commission does involve the exclusion of the amount of dividends paid to members of federal associations, which is one of the several items which determines the measure of the tax. We see no reason why the objectionable feature could not properly be eliminated and the statute upheld.

Order affirmed.