CENTRAL FEDERAL SAVINGS AND LOAN ASSOCIATION OF PUERTO RICO, Plaintiff and Appellant, *v.* JOSÉ R. NOGUERA, SECRETARY OF THE TREASURY, Defendant and Appellee.

No. 557. Decided October 2, 1962.

*Pablo Defendini* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Genoveva R. Carrera, Assistant Solicitor General,* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE RIGAU delivered the opinion of the Court.

This case presents a situation similar to the one we considered in *First Federal Savings* v. *Secretary of the Treasury, ante,* p. 53. As in that case, the question posed here is the imposition of taxes by the Commonwealth of Puerto Rico on property belonging to a federal savings and loan association and the application of § 5 (h) of the Home Owners' Loan Act of 1933 (48 Stat. 128; 12 U.S.C.A. § 1464 (h)). That Act was extended to Puerto Rico since its origin in 1933, by express provision of the statute itself. 48 Stat. 134; 12 U.S.C.A. § 1466.

As to the issues raised by appellant herein, (1) the meaning and application of the aforesaid § 5(h), (2) the nature of federal savings and loan associations, and (3) the nature of the Puerto Rico Government Employees Association, we have nothing to add to our recent holding in the above-mentioned *First Federal* case.

However, this case raises an issue which, although mentioned in *First Federal*, must be considered more fully now since it is raised here and was not raised in the former case. We refer to the credit unions that may be organized in Puerto Rico pursuant to the Credit Unions Act, Act No. 10 of July 1, 1947, as amended, 7 L.P.R.A. §§ 651–694, which, because they are nonprofit institutions, are tax exempt, 7 L.P.R.A. § 694.[1]

The aforesaid section 5(h) authorizes local governments to impose taxes on federal savings and loan associations provided such taxes are not greater than those imposed on local similar institutions.[2] Appellant alleges that by virtue of that section it is tax exempt because the law of Puerto Rico authorizing the organization of credit unions exempts the latter from the payment of taxes.

If the credit unions involved here were institutions similar to federal savings and loan associations, appellant would be correct, but the fact is that, as we shall see, they are different institutions, of a different composition, of a different operation and with different purposes, and, therefore, the exemption of the former does not automatically signify the exemption of the latter.

---

[1] The official title in English of that Act is "Credit Unions Act". See, the English version of § 1 of Act No. 10 of July 1, 1947, Laws of Puerto Rico, Fourth Extraordinary Legislature of the 16th Legislative Assembly, p. 40; and annotation under 7 L.P.R.A. § 651.

[2] That section reads:

"No State, Territorial, county, municipal, or local taxing authority shall impose any tax on such associations or their franchise, capital, reserves, surplus, loans, or income greater than that imposed by such authority on other similar local mutual or cooperative thrift and home financing institutions." 12 U.S.C.A. § 1464(h).

In the leading case of *State* v. *Minnesota Federal Savings & Loan Ass'n*, 15 N.W.2d 568 (1944), the Supreme Court of Minnesota faced a situation like that involved here: that case involved a state tax, the same § 5(h) invoked here, a federal savings and loan association operating under the same federal act involved here, and an exemption granted by the state law to credit unions organized under the state credit unions act. To make that case more similar to ours, the Minnesota Credit Unions Act is quite similar to the act of Puerto Rico; in some places its provisions are alike, word by word. See, Laws of Minnesota, 1925, pp. 232–238, and compare with 7 L.P.R.A. §§ 651–694. Both acts are also quite similar to the Federal Credit Union Act, 48 Stat. 1216 (1934); 12 U.S.C.A. §§ 1751–1772.[3] The three acts regulate the same institution. These "cooperativas de crédito" are known in the United States as "credit unions" and they are thus called by state laws, the federal act on the subject and the official English version of our own Act, cited in footnote 1.

In the above-cited case of *State* v. *Minnesota Federal*, at pp. 572–574, the court made a thorough analysis of both institutions—credit unions and federal savings and loan associations—and reached the conclusion that they were different institutions and that hence, and in the light of a reasonable construction of § 5(h), the imposition of a state tax on federal savings and loan associations was valid.

The Supreme Court of Minnesota said at p. 572:

". . . The credit unions are created especially for the purpose of providing people of moderate means, salaried employees, and wage earners with an institution where they may borrow money for personal needs, such as medical bills and to meet temporary emergencies."

[3] We have found nothing in the legislative history of the Puerto Rico act indicating its origin, but its similarity with the Minnesota act is so great that it cannot be a mere coincidence, for which reason we think there is some connection between those acts and probably also between those statutes and the federal act.

And it stated further:

". . . The trial court held that the differences between the defendant and the credit unions constituted a sufficient basis for separate classification for the purpose of taxation. In this we agree."

Upon examining the situation of the case at bar and the Credit Unions Act of Puerto Rico, we reach the same conclusion on the following grounds:

■ (a) The main purpose of federal savings and loan associations, in addition to encourage saving, is to provide home financing, 12 U.S.C.A. § 1464, whereas the main purpose of credit unions, in addition to encourage saving, is to afford credit to persons of moderate financial means at reasonable rates of interest for their urgent personal needs. 7 L.P.R.A. § 651; *State* v. *Minnesota, etc., supra.*

(b) Credit unions are nonprofit associations, 7 L.P.R.A. § 694, and federal savings and loan associations are institutions for profit, *First Federal, etc., supra.*

■ (c) Credit unions may be organized only by persons who have a bond of common interest either through their work or through common membership in some organization, or by groups residing in well-defined neighborhoods, 7 L.P.R.A. § 663. Federal associations do not have this limitation.

(d) The members of credit unions have only one vote each, notwithstanding the number of shares they own, and voting by proxy is prohibited, 7 L.P.R.A. § 665. The members of federal associations may vote by proxy and have as many votes as shares, up to a maximum of fifty votes. The importance of this difference may be realized in connection with the nature and operation of each one of these two kinds of institutions.

(e) Credit unions make loans exclusively to their members, that is, persons having their savings in those institutions, or to other cooperative associations in special cases,

160

7 L.P.R.A. §§ 657, 678–680. Federal associations are not thus limited; they make loans on real property. 12 U.S.C.A. § 1464(c).

(f) Credit unions mainly make small personal loans, whereas federal savings and loan associations make large loans secured by mortgage.

(g) Congress itself considered them different institutions and to that effect it approved two different acts: the Home Owners' Loan Act of 1933 under which the federal savings and loan associations are incorporated, and the above-mentioned Federal Credit Union Act of 1934.

██ For the foregoing reasons we hold that two different institutions are here involved; that they may be dealt with differently in taxing matters; that appellant is not tax exempt; and that, therefore, the trial court did not err in so holding. The judgment entered by the Superior Court, San Juan Part, in this case on June 21, 1961, shall be affirmed.