JOHN D. CHISHOLM v. STATE CAPITOL CREDIT UNION.
DEPARTMENT OF MINNESOTA VETERANS OF FOREIGN
WARS OF THE UNITED STATES, INTERVENOR.

153 N. W. (2d) 156.

September 8, 1967—No. 40,110.

*James B. Lund,* for appellant.
*MacLaughlin & Harstad,* for respondent.

SHERAN, JUSTICE.
Appeal from a district court judgment.

On August 6, 1965, appellant, Department of Minnesota Veterans of Foreign Wars of the United States (hereinafter called VFW), intervening in a Ramsey County District Court action between John D. Chisholm, Minnesota commissioner of banks, and the State Capitol Credit Union, obtained an order requiring the credit union, its receiver, and the commissioner of banks to show cause why they should not be enjoined from listing the VFW as a member or shareholder of the credit union. It claimed it was, instead, a creditor. The district court entered findings of fact and conclusions of law favorable to the credit union. Judgment was entered and the VFW appeals.

The only issue before this court is whether the trial court erred in finding that certain funds transferred by the VFW to the credit union between 1949 and 1965 are properly held by the credit union in a share account for the VFW. In contending that the trial court erred, the VFW asserts four grounds:

(1) The VFW's transfer of funds to the credit union was a loan.

(2) The credit union's January 1964 transfer of certain of the VFW's funds from a deposit account to a share account was unauthorized.

(3) The provisions of Minn. St. 52.05 prohibited the VFW from becoming a member of the credit union.

(4) The VFW is not authorized to become a member of a credit union.

We hold that the trial court was justified in finding adversely to the VFW on each ground.

■ Although the evidence was conflicting, the trial court's finding that the VFW's transfers of funds to the credit union were not loans is sustained by the evidence. To show that the transfers were loans, the VFW introduced in evidence the following:

(1) A September 19, 1949, letter from its adjutant to the chairman of its finance committee, in which it was stated:

"We have recently heard from the State Capitol Credit Union that they will accept up to a $10,000.00 deposit from us at around 3.5% interest."

(2) A letter received by the adjutant September 21, 1949, from the finance committee chairman, stating:

"In reply to your letter of September 19 * * * I believe that we should call the members together to discuss the loaning out of this money at interest, as we must earn as much money as possible to carry on the affairs of the Department. I think that your suggestion is very good."

(3) An entry from the minutes of the VFW Council of Administration meeting October 8, 1949, containing the following:

"Chairman Downs of the Finance Committee reported on the meeting of his Committee and presented the following recommendations:

"1.  That $15,000.00 be transferred from the checking account balance to a deposit in the State Capitol Credit Union for the purpose of drawing interest on this money while it is not being used. This deposit to be payable upon call.

\* \* \* \* \*

"After a discussion * * * during which it was pointed out that, although this would be a sound investment with a good interest rate, the rules of the Association only allow a deposit of $10,000.00 by each depositor, it was moved by Laechel and seconded by Jackson that $10,000.00 be withdrawn from the Department checking account and invested in the State Capitol Credit Union. Carried."

(4) The adjutant-quartermaster's testimony as to a December 1959 conversation with Alonzo J. Snell, the secretary-treasurer and manager of the credit union:

"I can recall talking to Mr. Snell concerning our, the funds the Veterans of Foreign Wars had and our investment of these funds. At that time we had fifty thousand dollars in certificates of deposit at the * * * Bank. Mr. Snell * * * suggested that we put more funds into the State Capitol Credit Union. He told me that this would be handled as a special account since we were a little concerned about having too much money in one institution, and he said it would be handled in the same way that the credit union handles loans from the bank when it is

short of money, that we would get five per cent interest and that this would be protected as a privileged account, I suppose would be the word. I'm not quoting exactly on this. The information was given me that this would be the same, protected in the same manner as a first lien upon the assets of the State Capitol Credit Union. I transmitted this information to our Finance Committee by letter.

"Q. Was there anything as to when it would be payable?

"A. It would be payable upon call. And we would draw interest on the period of time in which we had the money invested.

"Q. Now, on your reliance on those statements, did you send that information to your Finance Committee?

"A. Yes. I sent a letter to Glenn Selleck, who was then the Chairman of our Finance Committee."

(5) A December 11, 1959, letter from the adjutant-quartermaster to the finance committee chairman, Glenn Selleck, stating:

"As you know, the Department has had $50,000 of its funds invested in certificates of deposit at the * * * Bank since early last year. * * *

"I talked to Lon Snell at the State Capitol Credit Union a week or so ago and mentioned that I felt we should get a higher interest rate than 3% but that there is a feeling among our people that banks offer a more secure investment than other institutions. He informed me that the Credit Union quite often has to make a bank loan when it is short of ready cash and offered us the same deal they get from banks.

"If we will place the $50,000 with the Credit Union, they will handle it as a straight loan and pay us 5% interest. A straight loan, I am informed, is protected by a first lien against the entire assets of the Credit Union and has priority in repayment over either savings or shares. They will handle it for any period of time we desire and it will be payable upon call with no loss of interest."

(6) An entry from the minutes of the VFW Council of Administration meeting of March 5, 1960, in which the following is recorded:

"Selleck reported that $50,000.00 has been invested in certificates of deposit at the * * * Bank in St. Paul for the past two years, drawing interest at a rate of 3 per cent per annum. He stated that the State

Capitol Credit Union has offered a 5 per cent rate on a straight loan basis for whatever period of time is desired. He recommended that $30,000.00 be loaned to the Credit Union upon the expiration of the present certificates of deposit on June 30, * * *.

"Motion was made by Voss, seconded by Anderson, to concur with the recommendations of the committee.

"* * * Motion was put and carried."

If this were the only evidence presented, the VFW might be entitled to the relief it seeks. But in view of other evidence in the case, the trial court was justified in finding that the agreement with the credit union was misunderstood by the VFW officials. Such other evidence includes the following:

(1) Alonzo J. Snell, credit union secretary-treasurer and manager, testified that he had never told the VFW adjutant-quartermaster that the credit union was interested in securing a loan from the VFW.

(2) Mr. Snell testified that the conversations he had with the adjutant-quartermaster were the same as with any other members and that it was stated in such conversations that the money would be handled in the same way as the money of other members.

(3) No note was given, and it was the policy of the credit union never to obtain a loan without giving a note.

(4) The VFW applied for and obtained credit union membership in 1949 and was at all times thereafter treated as a member. The financial statements it received each month from the credit union indicated it was being treated as a member and that its moneys were in ordinary deposit or share accounts. Those who merely make loans to the credit union do not apply for or obtain membership.

(5) The credit union records show no authorization for it to borrow money from the VFW, nor do they at any point indicate any receipt of VFW funds as a loan.

(6) The interest rate on funds placed with the credit union varied several times from 1949 to 1965, and the VFW rate followed these variations and was at all times the rate declared by the credit union directors.

Considering the evidence as a whole, the trial court was justified in finding that the agreement between the VFW and the credit union was not that of a loan.

■ The trial court was justified in rejecting the VFW claim that the January 1964 transfer from a VFW deposit account to a VFW share account was unauthorized in light of the following evidence:

(1) An entry in the credit union records showing that the transfer was made "at the request of the trustee on the account," who would have been the VFW's adjutant-quartermaster.

(2) Testimony that the credit union never made such transfers absent a request by the depositor.

(3) Although a January 1964 credit union member's statement sent to the VFW clearly showed the transfer, and the monthly statements thereafter showed that all VFW funds were in shares, the VFW made no objection until the present proceedings were brought.

■ Minn. St. 52.05 provides:

"* * * Organizations, incorporated or otherwise, composed for the most part of the same general group as the credit union membership may be members. * * * Credit union organizations shall be limited to groups, of both large and small membership, having a common bond of occupation, or association, or to residents within a well-defined rural district." [1]

Although the VFW brought out the fact that it had 40,000 members, it failed to show that it was not "composed for the most part of the same general group as the credit union membership" or that it did not have a "common bond of occupation, or association" with other members of the credit union.

■ The trial court was justified in finding that the VFW failed to prove that it was not authorized to become a member of a credit union. The VFW did not present evidence of any provision of its constitution or bylaws prohibiting it from doing so, and the adjutant-quartermaster

---

[1] See, State v. Minnesota Federal Sav. & Loan Assn. 218 Minn. 229, 15 N. W. (2d) 568.

testified that he knew of no such provision. Nothing in 36 USCA, §§ 113, 114,[2] cited by the VFW, appears to proscribe such membership.

The judgment must be affirmed.

Affirmed.

---

[2] 36 USCA, § 113, provides: "The purposes of this corporation [VFW] shall be fraternal, patriotic, historical, and educational; to preserve and strengthen comradeship among its members; to assist worthy comrades; to perpetuate the memory and history of our dead, and to assist their widows and orphans; to maintain true allegiance to the Government of the United States of America, and fidelity to its Constitution and laws; to foster true patriotism; to maintain and extend the institutions of American freedom; and to preserve and defend the United States from all her enemies, whomsoever."

36 USCA, § 114, provides: "The corporation created by this chapter shall have the following powers: To have perpetual succession with power to sue and be sued in courts of law and equity; to receive, hold, own, use, and dispose of such real estate, personal property, money, contract, rights, and privileges as shall be deemed necessary and incidental for its corporate purposes; to adopt a corporate seal and alter the same at pleasure; to adopt, amend, apply, and administer a constitution, bylaws, and regulations to carry out its purposes, not inconsistent with the laws of the United States or of any State; to adopt, and have the exclusive right to manufacture and use such emblems and badges as may be deemed necessary in the fulfillment of the purposes of the corporation; to establish and maintain offices for the conduct of its business; to establish, regulate, or discontinue subordinate State and Territorial subdivisions and local chapters or posts; to publish a magazine or other publications, and generally to do any and all such acts and things as may be necessary and proper in carrying into effect the purposes of the corporation."