MIDWEST FEDERAL SAVINGS AND
LOAN ASSOCIATION of
Minnesota, Relator,

v.

COMMISSIONER OF REVENUE,
Respondent.

No. 47430.

Supreme Court of Minnesota.

Nov. 4, 1977.

Thompson, Hessian, Fletcher, McKasy & Soderberg and Thomas E. Harms and William C. Borchers, Minneapolis, for relator.

Warren Spannaus, Atty. Gen., Paul R. Kempainen, Special Asst. Atty. Gen., Dept. of Revenue, St. Paul, for respondent.

PETERSON, Justice.

This case is before us on a writ of certiorari to the Tax Court of Appeals. On stipulated facts, the tax court affirmed an order by the commissioner of revenue directing Midwest Federal Savings and Loan Association (Midwest Federal) to pay sales and use taxes of $53,283.26, plus interest, for the period from July 1, 1968, through February 28, 1973. Midwest Federal contends that because it has been chartered by the Federal government it is an "instrumentality" of the United States and as such within the exemption from sales and use tax granted by Minn.St. 297A.25, subd. 1(j). Failing such an exemption, Midwest Federal contends its lease of certain computer equip-

ment, and its purchase of personal property for transfer as premiums to depositors, are not taxable under the Minnesota sales and use tax statute. We affirm.

1. We consider first the potentially dispositive question of whether Midwest Federal is within the sales and use tax exemption granted to "the United States and its agencies and instrumentalities." Minn.St. 297A.25, subd. 1(j). This statutory exemption reflects the traditional rule of Federal-state relations that units of one government will not be taxed by the other government. Midwest Federal contends that it is a Federal instrumentality entitled to the statutory exemption despite the fact it is privately funded by its depositors and privately managed for the financial benefit of private shareholder-members.

The constitutional doctrine that federally chartered financial institutions are Federal "instrumentalities" exempt from state taxation unless authorized by Congress was enunciated in *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). In that celebrated case, Mr. Chief Justice Marshall held that in the absence of congressional authorization Maryland lacked power to tax bank notes (currency) issued by the Second Bank of the United States. While that bank clearly was an "instrumentality" of the United States in issuing bank notes, the doctrine soon grew to cover more remote "instruments" of the Federal government. Federally chartered, but essentially private, banks and other financial institutions were held to be Federal "instrumentalities" in that Congress must authorize their taxation by the states. E. g., *Owensboro National Bank v. Owensboro*, 173 U.S. 664, 667, 19 S.Ct. 537, 538, 43 L.Ed. 850, 852 (1899). Even Federal employees were viewed as Federal instrumentalities in this sense. In *Geery v. Minnesota Tax Commission*, 202 Minn. 366, 278 N.W. 594 (1938), this court held that the rule of *McCulloch* barred Minnesota from taxing the income of the governor of the Federal Reserve Board, since he was an "instrumentality" of the Federal government which Congress had not authorized the states to tax.

The perceived inequity of tax immunity for essentially private businesses and persons who happened to be Federal employees has led Congress to steadily broaden the states' authorization to tax. For instance, 12 U.S.C.A. § 548, was recently amended to allow the state to tax federally chartered national banks in exactly the same manner as state banks. And, by 12 U.S.C.A. § 1464(h), Congress has authorized the states to tax federally chartered savings and loan associations.

This history sheds important light on *State v. Minnesota Federal Savings & Loan Assn.*, 218 Minn. 229, 15 N.W.2d 568 (1944), where *Geery v. Minnesota Tax Commission, supra,* and many other cases were cited as authority for the statement that:

> "* * * A savings and loan association incorporated under federal law is an instrumentality of the United States and free from taxation by states except to the extent that Congress may permit it." 218 Minn. 238, 15 N.W.2d 573.

Midwest Federal emphasizes only the first part of the quotation. But taken as a whole, it is clear this court was simply reaffirming the long-established constitutional principle that state taxes on federally chartered financial institutions must be authorized by Congress.[1]

The issue in this case, of course, is not whether this state's sales and use taxes on a federally chartered savings and loan association are constitutionally permissible, for Midwest Federal acknowledges that by 12 U.S.C.A. § 1464(h), Congress has authorized the state to impose such taxes. The issue, rather, is whether, as a matter of statutory construction, Minnesota has granted a statutory exemption to entities which Congress has authorized Minnesota to tax. We hold that it has not. The legislature did not, by its statutory reference to "instrumentalities," intend to confer governmental tax exemption on an essentially private business organization such as Midwest Federal. It is wholly private in character; it is not a part of the Federal government and performs no substantial Federal function. It is patently unreasonable to ascribe an intent by the legislature to tax state chartered savings and loan associations but not federally chartered savings and loan associations. The mere fact that an entity received its charter from the Federal government and is regulated by the Federal government is accordingly not sufficient to bring it within the statutory exemption.

2. We turn, then, to Midwest Federal's contention that two transactions specifically in issue were otherwise not taxable under the statute. The first involves a sale and leaseback agreement covering certain computer equipment. At various times in 1966 and 1967 Midwest Federal purchased computer equipment for use in its business. In December 1967, Midwest Federal sold the equipment to National Computer Rental, Ltd. (NCR), a corporation doing business in New York. A bill of sale was executed in consideration of $1,000,029 paid to Midwest Federal. Simultaneously, a lease agreement was executed under which NCR leased the equipment back to Midwest Federal for a rental of $15,758 per month. The equipment never left its installed location on Midwest Federal's premises. The term of the lease was 96 months, the approximate useful life of the equipment.

The commissioner of revenue ordered payment of a compensating use tax on the lease payments made by Midwest Federal. Midwest Federal does not dispute that lease payments on tangible personal property are

1. An examination of the issues involved in *State v. Minnesota Federal Savings & Loan Assn.*, 218 Minn. 229, 15 N.W.2d 568 (1944), reinforces this view. In that case the appellant savings and loan association challenged several Minnesota tax statutes, contending their different treatment of credit unions and savings and loan associations violated constitutional guarantees of uniform taxation and equal protection or, alternatively, violated a provision of the Federal Home Owners' Loan Act of 1933 prohibiting discriminatory taxation of federally chartered savings and loan associations. Thus the critical issue in Minnesota Federal was the degree of similarity between savings and loan associations and credit unions. The statement quoted in the body of the opinion was made only in passing to that issue and is not the holding of the case.

subject to sales and compensating use tax under Minn.St. 297A.01, subd. 3(a), and 297A.14. Midwest Federal's position is that its agreement with NCR was a sale and leaseback in form only. It contends the agreement was in substance a $1 million loan from NCR to Midwest Federal which was secured by transferring title in the equipment to NCR. Thus Midwest Federal contends the monthly payments to NCR were in reality nontaxable loan repayments, not taxable rent payments.

■ We agree that on tax questions a court is free to look to the substance, not just the form, of a transaction. *Transport Leasing Corp. v. State*, 294 Minn. 134, 199 N.W.2d 817 (1972). But in this case the provisions of the leasing agreement provide substantive support for the parties' stipulation that they entered a sale and leaseback agreement. The lease contains a statement that it represents the entire agreement between the parties. It provides no option for Midwest Federal to purchase the equipment or for lease payments to build equity in the equipment. The lease also allows Midwest Federal to cancel at any time after 66 months, although a penalty is imposed. Additionally, the lease provides that Midwest Federal is liable for any sales and use taxes levied on the lease. These are among the indicia that the agreement was a lease in fact as well as in form. Having elected to arrange its business in that manner, Midwest Federal is subject to the tax consequences of it. Cf. *Milwaukee Motor Transp. Co. v. Commr. of Taxation*, 292 Minn. 66, 75, 193 N.W.2d 605, 610 (1971).

■ Midwest Federal contends, further, that the rule against double taxation bars taxation of its lease payments. This argument is similarly without merit. No tax was paid on Midwest Federal's initial acquisition of the equipment. No tax was paid on the sale of the equipment to NCR, since it was located in New York. The use tax imposed by the commissioner is based on the lease of the equipment to Midwest Federal, the third of three distinct transactions.

Imposition of the tax does not offend the general rule against double taxation.

■ 3. The second transaction in issue involves various items of personal property purchased by Midwest Federal and transferred as "gifts" or "premiums" to customers who deposit specified amounts either by opening a new account or by adding to an existing account. It is undisputed that Midwest Federal is now liable for use tax under Minn.St. 297A.14 if, but only if, it should have paid sales tax on its purchase of the items. The underlying question, therefore, is whether a sales tax should have been paid on the sale from the vendor to Midwest Federal.

The transfer of the items from the vendor to Midwest Federal was clearly a "sale" within the terms of Minn.St. 297A.01, subd. 3(a). The dispute is whether the sale to Midwest Federal was a taxable "sale at retail" or a nontaxable "sale for resale." Under Minn.St. 297A.01, subd. 4, the sale of the items to Midwest Federal was a taxable retail sale unless the subsequent transfer to depositors was a "resale in the regular course of business."

We conclude that the subsequent transfer to depositors was not a "resale." The depositors made no payment for the items and retained the right to withdraw the sum they deposited. These transfers to depositors were promotional gifts or premiums, and not a resale. Therefore, Midwest Federal is liable for sales or compensating use tax on its initial purchase of the items. Given this conclusion, it is unnecessary to reach the question discussed by the tax court of whether the transfer of the items to depositors was "in the regular course of business."

Affirmed.

OTIS and YETKA, JJ., took no part in the consideration or decision of this case.

WAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.