ARCHER DANIELS MIDLAND
COMPANY, Respondent,

v.

The STATE of Minnesota, ex rel. Clyde
ALLEN, Jr., Commissioner of the Min-
nesota Department of Revenue, Appel-
lant.

No. 81–305.

Supreme Court of Minnesota.

Feb. 12, 1982.

Warren Spannaus, Atty. Gen., and Thom-
as K. Overton, Sp. Asst. Atty. Gen., Dept. of
Revenue, St. Paul, for appellant.

Faegre & Benson, Lawrence C. Brown
and John F. Beukema, Minneapolis, for re-
spondent.

OTIS, Justice.

Respondent Archer Daniels Midland Com-
pany ("ADM") brought an action for declar-
atory judgment seeking to have a portion of
Minn.Stat. § 296.02, subd. 7 (1980) ("the
Act") declared unconstitutional. ADM al-
leged that the Act discriminates against
interstate commerce by providing a tax re-
duction only for gasohol blended with alco-
hol distilled in Minnesota from Minnesota

farm products ("Minnesota gasohol"). Upon a motion for summary judgment the district court held that a portion of the Act was unconstitutional under the Commerce Clause because it discriminates against interstate commerce. The district court ordered that portion of the Act stricken which limits the tax reduction to Minnesota gasohol and extended the Act's tax reduction to all gasohol regardless of its origin. The State of Minnesota appeals from the order of judgment. We affirm in part and reverse in part.

The facts in this case are stipulated. ADM is a Delaware corporation with its principal place of business in Illinois. ADM is the largest producer of fuel-grade alcohol in the United States. Fuel-grade alcohol is distilled from agricultural products, usually corn, and is the alcohol component in gasohol. One part fuel-grade alcohol is blended with nine parts gasoline or diesel fuel to produce gasohol. ADM ships in excess of 100,000 gallons of fuel-grade alcohol per month into Minnesota, which, when blended with gasoline or diesel fuel, accounts for approximately 85 percent of the gasohol sold in Minnesota.

The State of Minnesota imposes an excise tax of 13 cents per gallon on all gasoline sold in Minnesota. *See* Minn.Stat. § 296.02, subd. 1 (Supp.1981). Gasohol is subject to this excise tax. In 1980, however, the Minnesota Legislature acted to exempt some, but not all, gasohol from a portion of the gasoline excise tax. Specifically, the Act provides for a four-cent per gallon reduction in the gasoline excise tax for gasohol (which is called "agricultural alcohol gasoline") if, and only if, the gasohol was blended by a distributor using alcohol distilled within Minnesota and the agricultural products used in the distillation were produced within Minnesota. The Act, in relevant part, states that "[t]he tax on gasoline imposed by subdivision 1 shall be reduced by four cents per gallon for gasoline which is agricultural alcohol gasoline as defined in section 296.01, subdivision 24, which is blended by a distributor with alcohol distilled in this state from agricultural products produced in this state * * *." Minn. Stat. § 296.02, subd. 7 (1980).

None of ADM's fuel-grade alcohol is distilled in Minnesota, and while ADM does have plans to expand its production of fuel-grade alcohol, ADM does not plan to build a distillery in Minnesota. In addition, none of ADM's fuel-grade alcohol is distilled from agricultural products grown in Minnesota, nor is it expected that ADM's expansion will occasion its use of agricultural products grown in Minnesota. Thus, all gasohol blended with fuel-grade alcohol distilled by ADM is ineligible for the four-cent per gallon reduction afforded by the Act.

We first consider whether the Act violates the Commerce Clause of the United States Constitution by providing a four-cent per gallon tax reduction in favor of Minnesota gasohol. While every presumption favors the constitutionality of a statute, *see, e.g., Miller Brewing Co. v. State*, 284 N.W.2d 353, 356 (Minn.1979), this court has also stated that "we may not stretch the Constitution to suit the convenience of the hour." *Reed v. Bjornson*, 191 Minn. 254, 257, 253 N.W. 102, 104 (1934). The Commerce Clause grants to Congress the power "[t]o regulate Commerce . . . among the several States." Although the Clause speaks in terms of a grant of power, it has long been recognized as limiting "the power of the States to erect barriers against interstate trade." *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 35, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980). Indeed, it is well established by the history of the Commerce Clause that this nation is a common market in which state lines cannot be made hurdles to the free flow of interstate commerce. *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 803, 96 S.Ct. 2488, 2494, 49 L.Ed.2d 220 (1976).

While the Supreme Court has used a variety of formulations for the Commerce Clause limitation upon the states, it consistently has distinguished between outright protectionism and more indirect burdens on the free flow of commerce. *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 36, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980).

The Court has stated that "where simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected." *Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978). In contrast, state legislation that is facially neutral by regulating evenhandedly to effectuate a legitimate local public interest is constitutional if the burden imposed upon interstate commerce is not excessive in relation to the local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

Applying the foregoing principles to this case, it is apparent that the Act is unconstitutional under the Supreme Court's *per se* formulation. The Act provides that the Minnesota gasoline excise tax shall be reduced by four cents per gallon of gasohol "which is blended by a distributor with alcohol distilled in this state from agricultural products produced in this state." This is facial discrimination which openly places a more onerous tax burden upon out-of-state gasohol simply "because of its origin in another State." *Baldwin v. Seelig*, 294 U.S. 511, 526, 55 S.Ct. 497, 502, 79 L.Ed. 1032 (1935).

The Act is also unconstitutional under the Supreme Court's balancing test. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 475 (1970). First, unlike the legislation in *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 457, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981), the Act in this case does not regulate evenhandedly. Second, the Act does not serve legitimate local interests such as public safety which may justify state regulation of interstate commerce. *See Breard v. Alexandria*, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951). Rather, the Act attempts to unfairly preserve local markets for local interests by conferring an artificial economic advantage to local interests under the State's taxing power. As stated by Justice Cardozo in *Baldwin v. Seelig*, 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935):

If New York, in order to promote the economic welfare of her farmers, may guard them against competition with the cheaper prices of Vermont, the door has been opened to rivalries and reprisals that were meant to be averted by subjecting commerce between the states to the power of the nation.

\* \* \* \* \* \*

The Constitution was framed under the dominion of a political philosophy less parochial in range. It was framed upon the theory that the peoples of the several states must sink or swim together, and that in the long run prosperity and salvation are in union and not division.

*Id.* at 522–523, 55 S.Ct. at 500. Economically based state legislation which directly burdens interstate commerce has almost invariably been struck down. *See* L. Tribe, *American Constitutional Law* 340 (1978). Finally, less burdensome alternatives, such as property tax relief, appear to be available. The Act, therefore, imposes a burden on interstate commerce which is clearly excessive in relation to the local benefit.

Appellant State of Minnesota finally argues that the Act finds constitutional validity under the Supreme Court's holding in *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976). There the Court upheld a Maryland statutory scheme whereby the state purchased crushed auto hulks (inoperable vehicles over eight years old) at a premium price in order to rid the state of abandoned autos. Virginia scrap processors claimed that Maryland violated the Commerce Clause by effectively refusing to purchase hulks from out-of-state processors. The *Alexandria Scrap* majority said "[n]othing in the purpose animating the Commerce Clause forbids a State, in the absence of Congressional action, from participating in the market and exercising the right to favor its own citizens over others." *Id.* at 810, 96 S.Ct. at 2498 (footnotes omitted). Thus, when the state acts as a market participant, rather than a market regulator, the state may, like any other buyer or seller, limit the people with whom it deals. As recently reiterated by the Court in *Reeves, Inc. v. Stake*, 447 U.S. 429, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980):

The basic distinction drawn in *Alexandria Scrap* between States as market participants and States as market regulators makes good sense and sound law. As that case explains, the Commerce Clause responds principally to state taxes and regulatory measures impeding free private trade in the national marketplace. * * * There is no indication of a constitutional plan to limit the ability of the States themselves to operate freely in the free market.

*Id.* at 436–37, 100 S.Ct. at 2277 (citations omitted). The Act in this case clearly thrusts the State into the role of market regulator. The Act does not provide for the State's purchase of Minnesota gasohol at a premium price. Rather, the Act regulates the gasohol market by providing a four-cent per gallon tax reduction in favor of Minnesota gasohol. Accordingly, appellant's attempt to find constitutional validity under the holding of *Alexandria Scrap* must fail. Indeed, as the Supreme Court explicitly noted in *Alexandria Scrap*, the Maryland statutory scheme did not place out-of-state processers "in the position of a foreign business which enters a State in response to completely private market forces to compete with domestic businesses, only to find itself burdened with discriminatory taxes or regulations." 426 U.S. at 810 n.20, 96 S.Ct. at 2498 n.20. In the instant case, however, the Act undoubtedly burdens ADM, an out-of-state business, with discriminatory taxes.

We hold therefore that the Act is unconstitutional under the Commerce Clause and that the Act cannot find constitutional validity under the Supreme Court's holding in *Alexandria Scrap*.

■ We next consider the appropriate remedy in light of the Act's unconstitutionality. Specifically, should the unconstitutional language be severed thus extending the Act's tax reduction to all producers of gasohol, or should the Act be entirely invalidated thus eliminating the tax reduction for all producers of gasohol?

We look first to the intention of the Legislature to fashion a remedy consistent therewith. *See, e.g., Mankato Citizens Telephone Co. v. Commissioner of Taxation,* 275 Minn. 107, 112, 145 N.W.2d 313, 317 (1966); Minn.Stat. § 645.16 (1980). In this case, the unconstitutional language of the Act explicitly limits the four-cent per gallon tax reduction to Minnesota gasohol. This indicates a legislative intent to benefit only intrastate concerns. If the unconstitutional language of the Act were stricken and the Act's tax reduction extended to out-of-state concerns such as ADM, this legislative intent would be completely frustrated. We conclude, therefore, that the remaining provisions of the Act, standing alone, "are incapable of being executed in accordance with the legislative intent." Minn.Stat. § 645.20 (1980). In addition, Minn.Stat. § 645.17(5) (1980) provides that "the legislature intends to favor the public interest as against any private interest." An extension of the Act's tax reduction to all producers of gasohol would redound almost exclusively to ADM's benefit. This is because ADM supplies 85 percent of the fuel-grade alcohol used in this State to make gasohol.

ADM finally argues that *State v. Minnesota Federal Savings & Loan Ass'n,* 218 Minn. 229, 15 N.W.2d 568 (1944) is on point with the instant case. There this court affirmed a tax commission ruling which severed a discriminatory portion of an income tax statute and extended the benefit of the statute's income tax credit to federal as well as state savings and loan associations. This court stated "[i]t seems clear that the legislative intent would be to sustain the statute in a limited application rather than to eliminate entirely a tax otherwise valid." *Id.* at 245, 15 N.W.2d at 576. In this case, however, a similar legislative intent is not at all clear. Furthermore, if we entirely invalidate the Act in this case we do not "eliminate entirely a tax otherwise valid." *Id.* Rather, we simply subject all producers of gasohol, whether intrastate or out-of-state, to the full gasoline excise tax.

Affirmed in part and reversed in part.

KELLEY, J., took no part in the consideration or decision of this case.