(No. 63630.—

RUSSELL STEWART OIL COMPANY, Appellee, v. THE STATE OF ILLINOIS, Department of Revenue, *et al.*, Appellants.

*Opinion filed September 22, 1988.*

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellants.

James T. Otis, Clarence O. Redman, Janet L. Jannusch, Randye A. Kogan, and Cathy D. Furda, of Keck, Mahin & Cate, of Chicago, for appellee.

Chadwell & Kayser, Ltd., of Chicago (Peter R. Sonderby, William E. Snyder, and Mary C. Gilhooly, of counsel), for *amici curiae* Illinois Corn Growers Association and National Corn Growers Association.

Daniel S. Hall, of Bloomington, for *amicus curiae* Illinois Agricultural Association.

JUSTICE WARD delivered the opinion of the court:

The plaintiff, Russell Stewart Oil Company, brought an action for injunctive and declaratory relief in the circuit court of Cook County challenging the constitutionality of recent amendments to the Use Tax Act (Ill. Rev.

Stat. 1985, ch. 120, par. 439.1 *et seq.*) and the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 440 *et seq.*). Public Acts 84—223 and 84—220, effective September 1, 1985, amend both acts to establish a different tax rate structure for sales of gasohol containing ethanol which is distilled in Illinois or in a State which offers Illinois reciprocal tax benefits. (Ill. Rev. Stat. 1985, ch. 120, pars. 439.3, 441.) Section 3 of the Use Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 439.3) was also amended to change the definition of "gasohol." The amendment provided that the gasohol entitled to the reduced tax rate was gasohol "obtained from cereal grains or food processed by-products essentially derived from cereal grain." The plaintiff claimed that as amended, the statutes were unconstitutional because they discriminate against interstate commerce in violation of the commerce clause of the Constitution of the United States (U.S. Const., art. I, §8, cl. 3). The circuit court of Cook County granted the plaintiff's motion for summary judgment, holding that the challenged statutes were unconstitutional under the commerce clause. A direct appeal to this court was taken pursuant to Rule 302(a)(1). 107 Ill. 2d R. 302(a)(1).

The facts were stipulated by the parties. The plaintiff, Russell Stewart Oil Company, is an Illinois corporation which owns and operates retail gas stations in Illinois, Iowa, and Wisconsin. At these stations, it sells "gasohol," which is a blend of nine parts gasoline and one part ethanol. Ethanol, a 199 proof alcohol, is obtained by fermenting raw materials, such as agricultural products, cellulosic materials or petroleum products. The plaintiff purchases ethanol and gasoline from sources, blends them into gasohol and sells the product at its stations.

Effective September 1, 1985, the General Assembly amended section 2 of the Retailers' Occupation Tax Act

(Ill. Rev. Stat. 1985, ch. 120, par. 441) and section 3 of the Use Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 439.3). The amendments set out a new tax rate structure for the sale of the gasohol produced from ethanol distilled in Illinois or in a State offering Illinois reciprocal tax benefits relating to gasohol. Both the Use Tax Act and the Retailers' Occupation Tax Act generally impose upon persons engaged in the business of selling tangible personal property at retail a tax at a rate of 5% on the gross receipts from sales made in the regular course of business. As originally enacted, sales of gasohol were taxed at the same rate without regard to where the ethanol used to produce the gasohol was distilled. As amended, however, both acts now provide:

> "[W]ith respect to gasohol as defined in the Use Tax Act in which the ethanol has been distilled in Illinois, such tax shall be imposed at the rate of 0% up to and including December 31, 1983; and at the rate of 1% from January 1, 1984 up to and including the date immediately preceding the effective date of this amendatory Act of 1985; and at the rate of 2% *** from the effective date of this amendatory Act of 1985 up to and including May 31, 1986; and at the rate of 3% *** from June 1, 1986 up to and including December 31, 1992; and at the rate of 5% thereafter." Ill. Rev. Stat. 1985, ch. 120, pars. 439.3, 441.

The General Assembly also amended section 3 of the Use Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 439.3) to define that gasohol which was to be eligible for the tax benefit set out in both acts. The amended definition reads:

> " '[G]asohol' means motor fuel which is no more than 90% gasoline and at least 10% denatured ethanol which contains no more than 1.25% water by weight and is obtained from cereal grains or food processed by-products essentially derived from cereal grain." Ill. Rev. Stat. 1985, ch. 120, par. 439.3.

On September 15, 1985, the plaintiff filed this action seeking injunctive relief and a declaration that the amendments to the Retailers' Occupation Tax Act and the Use Tax Act were unconstitutional under both the United States and Illinois Constitutions. The plaintiff asserted that the amendments violated, *inter alia*, the commerce clause of the Constitution of the United States.

The circuit court granted the plaintiff's motion for summary judgment on the ground that the amended statutes discriminate against interstate commerce in their "purpose and effect," and therefore were unconstitutional under the commerce clause.

The Constitution of the United States provides that "[t]he Congress shall have Power *** [t]o regulate Commerce with foreign Nations and among the several States." (U.S. Const., art. I, §8, cl. 3.) While the clause speaks in terms of powers given the Congress, it has long been recognized that it also restricts the power of the States to regulate or tax entities engaged in interstate commerce. (*Lewis v. BT Investment Managers, Inc.* (1980), 447 U.S. 27, 35, 64 L. Ed. 2d 702, 711, 100 S. Ct. 2009, 2015; *Southern Pacific Co. v. Arizona* (1945), 325 U.S. 761, 769, 89 L. Ed. 1915, 1924, 65 S. Ct. 1515, 1520; *Cooley v. Board of Wardens* (1851), 53 U.S. (12 How.) 299, 13 L. Ed. 996.) There is no specific language imposing this restraint, but it has emerged from decisions of the Supreme Court giving effect to the basic purpose of the clause, that is, "to create an area of free trade among the several states." (*Boston Stock Exchange v. State Tax Comm'n* (1977), 429 U.S. 318, 328, 50 L. Ed. 2d 514, 523, 97 S. Ct. 599, 606, quoting *McLeod v. J. E. Dilworth Co.* (1944), 322 U.S. 327, 330, 88 L. Ed. 1304, 1306, 64 S. Ct. 1023, 1025.) The limitation upon State power under the commerce clause is not,

however, absolute. The Supreme Court has held that the States, under our constitutional scheme, retain the authority, in the absence of conflicting Federal legislation, to regulate matters of "legitimate local concern," even though interstate commerce may be affected. *Lewis v. BT Investment Managers, Inc.* (1980), 447 U.S. 27, 35, 64 L. Ed. 2d 702, 711, 100 S. Ct. 2009, 2015; *Great Atlantic & Pacific Tea Co. v. Cottrell* (1976), 424 U.S. 366, 371, 47 L. Ed. 2d 55, 60, 96 S. Ct. 923, 928.

It is clear, however, that "[n]o State may, consistent with the Commerce Clause, 'impose a tax which discriminates against interstate commerce *** by providing a direct commercial advantage to local business.' " (*Boston Stock Exchange v. State Tax Comm'n* (1977), 429 U.S. 318, 329, 50 L. Ed. 2d 514, 524, 97 S. Ct. 599, 607, quoting *Northwestern States Portland Cement Co. v. Minnesota* (1959), 358 U.S. 450, 458, 3 L. Ed. 2d 421, 427, 79 S. Ct. 357, 362.) Where the purpose of State legislation affecting interstate commerce amounts to "simple economic protectionism," a virtual *per se* rule of invalidity has been applied by the Court. (*Bacchus Imports, Ltd. v. Dias* (1984), 468 U.S. 263, 270, 82 L. Ed. 2d 200, 208, 104 S. Ct. 3049, 3054; *Minnesota v. Clover Leaf Creamery Co.* (1981), 449 U.S. 456, 471, 66 L. Ed. 2d 659, 673, 101 S. Ct. 715, 727; *Lewis v. BT Investment Managers, Inc.* (1980), 447 U.S. 27, 36, 64 L. Ed. 2d 702, 712, 100 S. Ct. 2009, 2015; *Philadelphia v. New Jersey* (1978), 437 U.S. 617, 624, 57 L. Ed. 2d 475, 481, 98 S. Ct. 2531, 2535.) Permitting individual States to enact laws favoring local businesses at the expense of out-of-State businesses would, in the language of the Court, "invite a multiplication of preferential trade areas destructive of the very purpose of the Commerce Clause." *Dean Milk Co. v. Madison* (1951), 340 U.S. 349, 356, 95 L. Ed. 329, 334, 71 S. Ct. 295, 299. See also *Maryland v. Louisiana* (1981), 451 U.S. 725, 754,

68 L. Ed. 2d 576, 600, 101 S. Ct. 2114, 2133; *Boston Stock Exchange v. State Tax Comm'n* (1977), 429 U.S. 318, 329, 50 L. Ed. 2d 514, 524, 97 S. Ct. 599, 607.

The Court, however, has stated that a statute which on its face is discriminatory against interstate commerce is not necessarily violative to the commerce clause if it "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *New Energy Co. v. Limbach* (1988), 486 U.S. ___, ___, 100 L. Ed. 2d 302, 311, 108 S. Ct. 1803, 1810; *Maine v. Taylor* (1986), 477 U.S. 131, 138, 91 L. Ed. 2d 110, 120, 106 S. Ct. 2440, 2447; *Sporhase v. Nebraska ex rel. Douglas* (1982), 458 U.S. 941, 958, 73 L. Ed. 2d 1254, 1267, 102 S. Ct. 3456, 3465.

Applying these principles to the statutory provisions at issue, it is clear that they are violative of the commerce clause. As amended, each act, on its face and in plain effect, discriminates against interstate commerce in favor of local interests. The statutes legislate expressly in terms of State boundaries, drawing a distinction between gasohol qualifying and not qualifying for the tax benefit on the basis of the origin of the distilled ethanol used to produce gasohol. Discrimination based on geographic origin is a kind of activity that the commerce clause serves to prevent. *Bacchus Imports, Ltd. v. Dias* (1984), 468 U.S. 263, 82 L. Ed. 2d 200, 104 S. Ct. 3049.

The obvious effect of the amendments giving tax preference to gasohol containing Illinois distilled ethanol is to aid Illinois distillers of ethanol at the expense of out-of-State distillers by granting Illinois producers what results in a substantial price advantage. The Supreme Court has repeatedly held that the commerce clause forbids such preferential treatment. (See, *e.g.*, *Bacchus Imports, Ltd. v. Dias* (1984), 468 U.S. 263, 82 L. Ed. 2d 200, 104 S. Ct. 3049; *Westinghouse Electric Corp. v. Tully* (1984), 466 U.S. 388, 80 L. Ed. 2d 388, 104 S. Ct.

1856; *Boston Stock Exchange v. State Tax Comm'n* (1977), 429 U.S. 318, 50 L. Ed. 2d 514, 97 S. Ct. 599.) Clearly, the amended provisions of each act constitute "simple economic protectionism" both on their face and in their actual effect. They must be considered unconstitutional as offending the commerce clause.

Similar tax statutes have been held unconstitutional. In *Archer Daniels Midland Co. v. State ex rel. Allen* (Minn. 1982), 315 N.W.2d 597, the supreme court of Minnesota invalidated a statute which provided a tax reduction in favor of gasohol produced and distilled in Minnesota. The court held that the statute was *per se* unconstitutional on the ground that it "openly places a more onerous tax burden upon out-of-state gasohol simply 'because of its origin in another State.'" 315 N.W.2d at 599, quoting *Baldwin v. Seelig* (1935), 294 U.S. 511, 526, 79 L. Ed. 1032, 1040, 55 S. Ct. 497, 502. See also *Miller v. Publisher Industries, Inc.* (Fla. 1984), 457 So. 2d 1374.

The State argues that the amended statutes do not discriminate against interstate commerce because both contain a reciprocity provision which offers the lower tax rate to gasohol produced in any other State whose legislature extends the same benefits to Illinois distillers of ethanol. Both acts, as amended, provide:

"If the Department of Revenue certifies that another jurisdiction outside the State of Illinois provides an exemption, credit, or refund from that jurisdiction's motor fuel excise tax, sales tax or similar tax that is applicable to gasohol which contains denatured ethanol distilled in Illinois, then gasohol containing ethanol distilled in the other jurisdiction and purchased on or after the effective date of this amendatory Act of 1985 shall be eligible for the exemption provided in this Section only to the level of exemption, credit, or refund that gasohol containing ethanol distilled in Illinois would receive in such other jurisdiction, but not to exceed the level of exemption pro-

vided for gasohol containing ethanol distilled in Illinois." Ill. Rev. Stat. 1985, ch. 120, pars. 439.3, 441.

The State says that with the reciprocity provision it cannot be contended that the General Assembly exempted from taxation gasohol which is produced in Illinois in order to protect Illinois producers from out-of-State competition. The State asserts the the purpose of the exemption in conjunction with the reciprocity provision is to "encourage" competition among the States by offering incentives to other States to enter into favorable trade agreements. The State further asserts that the reciprocity provision is necessary to eliminate the economic disadvantage suffered by Illinois ethanol distillers from jurisdictions which have enacted tax legislation favoring the sale of gasohol within those States. The State maintains that the reciprocity provision simply puts out-of-State ethanol producers on a tax-parity with Illinois ethanol producers. For this reason, the State says, the amended acts do not have a protectionist purpose and, consequently, are not *per se* unconstitutional under the commerce clause.

The reciprocity provisions in both acts do not make their discriminatory effect on interstate commerce less objectionable. The Supreme Court has consistently held that under the commerce clause one State may not penalize the products of another State in order to force that State to adopt measures that it deems desirable. (See, *e.g., New Energy Co. v. Limbach* (1988), 486 U.S. ___, 100 L. Ed. 2d 302, 108 S. Ct. 1803; *Sporhase v. Nebraska ex rel. Douglas* (1982), 458 U.S. 941, 73 L. Ed. 2d 1254, 102 S. Ct. 3456; *Great Atlantic & Pacific Tea Co. v. Cottrell* (1976), 424 U.S. 366, 47 L. Ed. 2d 55, 96 S. Ct. 923 (*A & P*).) In *A & P*, the Court invalidated a Mississippi regulation which provided that milk products from another State could be sold in Mississippi only if the other State accepts milk or milk products produced

and processed in Mississippi on a reciprocal basis. In holding that the statute violated the commerce clause, the Court stated:

"*** Mississippi may not use the threat of economic isolation as a weapon to force sister States to enter into even a desirable reciprocity agreement.

* * *

*** To allow Mississippi to insist that a sister State either sign a reciprocal agreement acceptable to Mississippi or else be absolutely foreclosed from exporting its products to Mississippi would plainly 'invite a multiplication of preferential trade areas destructive of the very purpose of the Commerce Clause.' [Citation.] No 'parochial legislative polic[y], [citation] could be more precisely calculated to open 'the door *** to rivalries and reprisals that were meant to be averted by subjecting commerce between the states to the power of the nation.' " 424 U.S. at 379-80, 47 L. Ed. 2d at 65-66, 96 S. Ct. at 932.

The Court rejected the argument that the reciprocity provision was justified as a response to Louisiana's alleged restrictions on interstate commerce. The Court stated that the commerce clause itself created the required reciprocity available in that if Louisiana's legislation violated the commerce clause, Mississippi could sue in State or Federal court and challenge the regulation as violative of the commerce clause.

The Court recently reaffirmed the principles announced in *A & P* in the recent decision of *New Energy Co. v. Limbach* (1988), 486 U.S. ___, 100 L. Ed. 2d 302, 108 S. Ct. 1803. In *New Energy*, the Court considered the constitutionality of an Ohio statute which granted a tax credit to ethanol produced in that State or, if produced in another State, allowed a tax credit but only to the extent that the other State granted similar tax advantages to ethanol produced in Ohio. In striking down the statute, the Court held that "[t]he present law *** imposes an economic disadvantage upon out-of-state

sellers; and the promise to remove that if reciprocity is accepted no more justifies disparity of treatment than it would justify categorical exclusion." (486 U.S. at ____, 100 L. Ed. 2d at 310, 108 S. Ct. at 1808.) The Court rejected Ohio's contention that the provision served a legitimate local interest in that it was necessary to encourage other States to enact ethanol subsidies, stating that "[w]hat is encouraged is not ethanol subsidies in general, but only favorable treatment for Ohio-produced ethanol." 486 U.S. at ____, 100 L. Ed. 2d at 312, 108 S. Ct. at 1811.

The Court has also emphasized that the tax laws in other jurisdictions are irrelevant in determining whether a particular State's legislation violates the commerce clause. In *Tyler Pipe Industries, Inc. v. Washington Department of Revenue* (1987), 483 U.S. 232, 242, 97 L. Ed. 2d 199, 210, 107 S. Ct. 2810, 2817, the Court stated that "[t]he facial unconstitutionality of [State tax legislation] cannot be alleviated by examining the effect of legislation enacted by its sister States." See also *Freeman v. Hewit* (1946), 329 U.S. 249, 256, 91 L. Ed. 265, 274, 67 S. Ct. 274, 278; *Armco Inc. v. Hardesty* (1984), 467 U.S. 638, 645 n.8, 81 L. Ed. 2d 540, 547 n.8, 104 S. Ct. 2620, 2624 n.8; *Halliburton Oil Well Cementing Co. v. Reily* (1963), 373 U.S. 64, 72, 10 L. Ed. 2d 202, 208, 83 S. Ct. 1201, 1205.

Moreover, the practical effect of a forced reciprocity provision is to shield Illinois producers of ethanol from competition from producers in any other State that does not agree to reciprocate. To impose such a burden on interstate commerce is wholly inconsistent with the principle underlying the commerce clause. In short, the reciprocity provision set out in both acts does not render otherwise facially discriminatory legislation constitutional under the commerce clause. *Sporhase v. Nebraska ex rel. Douglas* (1982), 458 U.S. 941, 958, 73 L. Ed. 2d

1254, 1267, 102 S. Ct. 3456, 3465; *Hughes v. Oklahoma* (1979), 441 U.S. 322, 337, 60 L. Ed. 2d 250, 262, 99 S. Ct. 1727, 1737.

The State argues that the amended definition of "gasohol" in section 3 of the Use Tax Act should be severed from the portions of the amendatory act that exempt from taxation gasohol distilled in Illinois or in other States offering Illinois reciprocal tax benefits if they are held unconstitutional. Standing alone, the State says, the amended definition does not offend the commerce clause because it draws no distinction between interstate and intrastate commerce.

The question of severability is essentially one of legislative intendment. In determining whether an unconstitutional provision of a statute is severable from the remainder, the court must ascertain and give effect to the intent of the legislature. (*Springfield Rare Coin Galleries, Inc. v. Johnson* (1986), 115 Ill. 2d 221, 237; *Dornfeld v. Julian* (1984), 104 Ill. 2d 261, 265-66.) The general standard for determining severability was stated by this court in *People ex rel. Adamowski v. Wilson* (1960), 20 Ill. 2d 568, 582: "If what remains after the invalid portion is stricken is complete in itself and capable of being executed wholly independently of that which is rejected, the invalid portion does not render the entire section unconstitutional unless it can be said that the General Assembly would not have passed the statute with the invalid portion eliminated." See also *Livingston v. Ogilvie* (1969), 43 Ill. 2d 9, 23.

The amendment to the Use Tax Act contains a severability clause which provides:

"If any provision of this amendatory Act of 1985 is held invalid, such invalidity shall not affect other provisions of this amendatory Act of 1985 or Acts amended thereby which can be given effect without the invalid provision, and to this end the provisions of this amendatory

Act of 1985 are severable." Pub. Act 84—223; 1985 Ill. Laws 2088.

It will not be necessary to determine whether the amended definition of "gasohol" contained in section 3 of the Use Tax Act is legally severable from the remainder of the amendatory act, because we conclude that the definition as amended is invalid.

Section 3 of the Use Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 439.3), as originally enacted, defined "gasohol" as that "obtained from agricultural products or by-products." As amended, however, the definition limits the raw materials to qualifying gasohol to "cereal grains or food processed by-products essentially derived from cereal grain."

Unlike the other provisions of the amendatory act which were explicitly based on the geographical origin of the distilled ethanol used to produce gasohol, the definition in section 3 of the Use Tax Act is neutral. It does not distinguish between ethanol produced in State or out of State. Where State legislation, on its face, imposes equal burdens on interstate as well as intrastate commerce, the Supreme Court has employed a balancing test in assessing the validity of the legislation under the commerce clause. The Court stated in *Pike v. Bruce Church, Inc.* (1970), 397 U.S. 137, 25 L. Ed. 2d 174, 90 S. Ct. 844:

> "Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. [Citation.] If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on inter-

state activities." 397 U.S. at 142, 25 L. Ed. 2d at 178, 90 S. Ct. at 847.

See also *Hughes v. Oklahoma* (1979), 441 U.S. 322, 336, 60 L. Ed. 2d 250, 262, 99 S. Ct. 1727, 1736; *Great Atlantic & Pacific Tea Co. v. Cottrell* (1976), 424 U.S. 366, 371-72, 47 L. Ed. 2d 55, 61, 96 S. Ct. 923, 928; *Huron Portland Cement Co. v. City of Detroit* (1960), 362 U.S. 440, 443, 4 L. Ed. 2d 852, 856, 80 S. Ct. 813, 815-16.

While the amendment to section 3 of the Use Tax Act, on its face, taxes all gasohol without regard to its geographic origin, its effect on interstate commerce will not be incidental. Under the structure of the ethanol producer's market in the United States, in its practical operation, the amended definition of ethanol will discriminate against and unduly burden interstate commerce. As the record indicates, as of 1985, 88% of the ethanol distilled in the United States is made from cereal-based grain ethanol. The other 12% is derived from raw materials other than cereal-based grain, which, of course, would not be eligible for the tax benefit. This 12% represents 66.5 million gallons of gasohol. More significantly, 99.4% of Illinois' ethanol production is from cereal-based grain. Thus, virtually no in-State ethanol producers are excluded from the tax benefit, while a significant portion of out-of-State producers who use the numerous other sources of raw materials to produce ethanol are excluded. The statute's effect is principally outside of Illinois and imposes a disproportionately heavy burden on interstate commerce.

The Supreme Court has recognized that State regulation that restricts both interstate and intrastate commerce may violate the commerce clause by having the "practical effect" of discriminating against interstate commerce in its operation. (*Hunt v. Washington State Apple Advertising Comm'n* (1977), 432 U.S. 333, 350-52, 53 L. Ed. 2d 383, 398-99, 97 S. Ct. 2434, 2445-46; *Best*

*v. Maxwell* (1940), 311 U.S. 454, 456, 85 L. Ed. 275, 277, 61 S. Ct. 334, 335; *Halliburton Oil Well Cementing Co. v. Reily* (1963), 373 U.S. 64, 69, 10 L. Ed. 2d 202, 206, 83 S. Ct. 1201, 1203; *Nippert v. Richmond* (1946), 327 U.S. 416, 431, 90 L. Ed. 760, 769, 66 S. Ct. 586, 593.) To illustrate, in *Best & Co. v. Maxwell* (1940), 311 U.S. 454, 85 L. Ed. 275, 61 S. Ct. 334, a North Carolina statute imposed a $250 annual privilege tax on persons soliciting sales by displaying samples in a hotel room, while the local merchant paid a privilege tax of one dollar. Although the tax, on its face, applied evenhandedly to all retailers, the Court found that in its practical operation it discriminated against out-of-State salesmen because local merchants normally would have retail stores in the State as outlets for their merchandise and would not need to resort to soliciting sales through samples in a rented hotel room. Concluding that the statute served no legitimate State interest, the Court held that it violated the commerce clause.

When State legislation discriminates against interstate commerce, in its purpose or effect, the "burden falls on the State to justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake." *Hunt v. Washington State Advertising Comm'n* (1977), 432 U.S. 333, 353, 53 L. Ed. 2d 383, 400, 97 S. Ct. 2434, 2446; *Hughes v. Oklahoma* (1979), 441 U.S. 322, 336, 60 L. Ed. 2d 250, 262, 99 S. Ct. 1727, 1736.

The State asserts that there are several valid legislative concerns which are furthered through the amended definition of "gasohol" in section 3 of the Use Tax Act. First, by restricting qualifying gasohol's raw material source to cereal-based grain, the State contends that the statute stimulates the demand for grain, which in turn helps to remedy the problems in the sector of the nation

caused by large grain surpluses. The State says that the amendment also furthers health and welfare objectives by stimulating the demand for gasohol, which, unlike leaded additives, is an environmentally benign fuel additive to gasoline. Too, the State contends, because gasohol acts as an octane enhancer and a gasoline extender, it reduces the amount of oil imported into our country, thereby reducing our dependence on foreign oil. For these reasons, the Department claims, any "incidental" burden imposed on interstate commerce by the statutes is outweighed by their legitimate objectives.

We are not persuaded that the claimed benefits can justify the disproportionately heavy burden imposed on interstate commerce. Contrary to the State's assertions, it cannot be reasonably contended that the change in the definition of "gasohol" will serve to improve the State's health. While encouraging the use of ethanol as a substitute for lead in gasoline may be a legitimate goal as a means of promoting the health of its citizens, the statute's limiting gasohol to the product made from "cereal-based grain" does not further this claimed objective. As the record shows, there is no chemical difference between cereal-based grain ethanol and that distilled from other sources, such as sugar solutions, cellulosic and starchy materials or petroleum by-products. Thus, the allowance of a tax benefit for gasohol without regard to the raw materials in the ethanol used would have the same effect of encouraging the use of gasohol without its discriminatory effect. Too, in the absence of plausible evidence it cannot be seriously contended that a change from a simple agricultural definition of ethanol to a narrowed cereal-grain definition will lessen the nation's dependence on foreign oil.

We may grant that the State interest in stimulating the demand for grain is a legitimate objective; nevertheless, it fails here to justify the resultant discrimination

against interstate commerce. We are not dealing here with State regulation in the field of public health or safety, where the propriety of local regulation has long been recognized. (See *Baldwin v. G. A. F. Seelig, Inc.* (1935), 294 U.S. 511, 79 L. Ed. 1032, 55 S. Ct. 497; *Breard v. City of Alexandria* (1951), 341 U.S. 622, 95 L. Ed. 1233, 71 S. Ct. 920.) There is a distinction between the power of a State to shelter its people from menace to their health or safety and a State's power to burden interstate commerce for economic reasons. (*H. P. Hood & Sons, Inc. v. Du Mond* (1949), 336 U.S. 525, 531-32, 93 L. Ed. 865, 871, 69 S. Ct. 657, 661-62. See also L. Tribe, American Constitutional Law §6—6, at 415 (2d ed. 1988).) Economically based State regulation which directly burdens interstate commerce has almost invariably been struck down. *E.g., Boston Stock Exchange v. State Tax Comm'n* (1977), 429 U.S. 318, 50 L. Ed. 2d 514, 97 S. Ct. 599; *Westinghouse Electric Corp. v. Tully* (1984), 466 U.S. 388, 80 L. Ed. 2d 388, 104 S. Ct. 1856; *Bacchus Imports, Ltd. v. Dias* (1984), 468 U.S. 263, 82 L. Ed. 2d 200, 104 S. Ct. 3049.

We recognize that the farming industry in this nation has grave problems, but this cannot operate to determine whether the statute runs afoul of the commerce clause. In *Bacchus Imports, Ltd. v. Dias* (1984), 468 U.S. 263, 82 L. Ed. 2d 200, 104 S. Ct. 3049, the Court rejected the argument that Hawaii's liquor tax, which exempted two locally produced alcoholic beverages from the State's wholesale liquor tax, was justified in order to subsidize Hawaii's financially troubled liquor industry. The Court stated that "we perceive no principle of Commerce Clause jurisprudence supporting a distinction between thriving and struggling enterprises. *** [T]he propriety of economic protectionism may not be allowed to hinge upon the State's—or this Court's—characterization of the industry as either 'thriving' or 'struggling.' " (468

U.S. at 272-73, 82 L. Ed. 2d at 210, 104 S. Ct. at 3056.) In any event, as the record indicates, 88% of the gasohol produced in the United States is derived from cereal-grain raw materials. Thus, providing a tax incentive for gasohol without regard to its raw materials will still stimulate the demand for grain, maybe not to the same degree, but without discriminating against interstate commerce.

The State has failed to sustain its burden of justifying the discrimination against interstate commerce in terms of the claimed local benefits flowing from the statute. The State has also failed to show the unavailability of nondiscriminatory alternatives. In view of the purported objectives of the statute and the presence of viable alternatives, it is clear that the demonstrated impact on interstate commerce is "clearly excessive in relation to the putative local benefits." (*Pike v. Bruce Church, Inc.* (1970), 397 U.S. 137, 142, 25 L. Ed. 2d 174, 178, 90 S. Ct. 844, 847.) Consequently, the amendment to section 3 of the Use Tax Act, which provides a new definition of "gasohol," also violates the commerce clause.

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

*Affirmed.*

JUSTICE STAMOS took no part in the consideration or decision of this case.